UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LAMONE LAUDERDALE-EL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:19-cv-00053-JPH-DLP |
| ) | |
| BRIAN SMITH, ) | |
| ) | |
| Respondent. ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Lamone Lauderdale-El's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISF 18-12-0089. For the reasons explained in this Entry, Mr. Lauderdale-El's petition must be **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

ISF 18-12-0089 began with the following conduct report, written by Maintenance Foreman D. Anderson on December 7, 2018:

> On 12-7-18 at approximately 0920 hours I, D. Anderson, tried to open the door to the staff restroom between dorm 16 North and 16 South. The door appeared to be blocked from the inside. I tried to force the door open using my shoulder, but the door would only slightly open and then slam shut. I tried a third time, pushed as hard as I could and almost got my foot in the door. At this time offender Kevin Vanleer D.O.C. # 912867 appears in the opening and he tells me to hold on. Then the door is forced closed from the inside. Once Vanleer exited I opened the door to the staff restroom and offender Lamone Lauderdale, D.O.C. #132421 was in there at the same time. I identified Lauderdale using his state I.D., and he is aware of this report.

Dkt. 9-1.

On December 28, 2018, Mr. Lauderdale-El received a screening report notifying him that he was charged with blocking a locking device in violation of Code 226. Dkt. 9-2. Mr. Lauderdale-El requested to call two witnesses: Maintenance Foreman Anderson (who wrote the conduct report) and Kevin Vanleer (who was also identified in the conduct report as blocking the door). *Id.* Mr. Lauderdale-El also requested surveillance video of the incident. *Id.*

ISF 18-12-0089 proceeded to a hearing on January 3, 2019. Dkt. 9-4. According to the hearing report, Mr. Lauderdale-El made the following statement in his defense: "I was never in the restroom. The maintenance guy never saw me in the bathroom with the offender. I was in there after this incident getting chemicals." *Id.* Mr. Vanleer provided the following written statement: "This offender was asked to assist in cleaning a lot of chemicals that were [spilt] in this area. He did not block any locking device while assisting in this situation." Dkt. 9-3. It is not clear whether Mr. Vanleer's statement refers to himself or to Mr. Lauderdale-El. The hearing officer noted that surveillance video was unavailable. Dkts. 9-2, 9-4. The hearing officer also denied

2

Mr. Lauderdale-El's request to call Mr. Anderson as a witness, reasoning that he had written the conduct report and that any statement from him would be repetitive. Dkts. 9-2, 9-4.

The hearing officer found Mr. Lauderdale guilty based on the conduct report. Dkt. 9-4. He assessed sanctions, including the loss of phone privileges for 30 days and the loss of 90 days' earned credit time. *Id.* Mr. Lauderdale-El's administrative appeals were denied. Dkts. 9-5, 9-6.

### III. Analysis

Mr. Lauderdale-El asserts numerous grounds for relief.[1] Before addressing them individually, the Court confronts an issue woven throughout Mr. Lauderdale-El's filings—that various aspects of the disciplinary proceeding violated state law, Indiana Department of Correction (IDOC) policies, or prison procedures. These are not grounds for habeas relief. *See, e.g.*, *Sandin v. Conner,* 515 U.S. 472, 481–82 (1995) (Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates."); *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis,* 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

---

[1] Mr. Lauderdale-El identifies seven separate grounds for relief in his petition. Many of those implicate multiple issues, and some overlap. He raises more issues in his memorandum in support of his petition, dkt. 8. The Court has endeavored to address all the grounds for relief asserted in both documents. To the extent Mr. Lauderdale-El intended to assert additional claims the Court has not addressed, they do not assert a due-process right covered by *Wolff* or *Hill*, and they do not justify habeas relief.

For this reason, the Court may not grant habeas relief based on any issue arising from the administrative appeals process, which is a creation of state law and IDOC and prison policies. There is no due process right to an administrative appeal, so no error during the administrative appeal process can justify habeas relief. In *Wolff,* the Supreme Court made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff,* do not include any safeguards during an administrative appeal—even a right to appeal at all. And the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.,* 266 F.3d 759, 768 (7th Cir. 2001).

The Court now turns to Mr. Lauderdale-El's remaining grounds for relief.

## A. Sufficiency of Evidence

Mr. Lauderdale-El argues that his disciplinary conviction was not supported by sufficient evidence. Specifically, he notes that the conduct report focuses primarily on Mr. Vanleer's conduct and asserts that no evidence proves that he participated in blocking the door.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

An inmate violates Code 226 by "[t]ampering with, altering or blocking any locking device or mechanism or possession of any device that may be used to pick locks." Dkt. 9-7 at § 226. The conduct report documents that Mr. Anderson attempted to open a restroom door and found it blocked from the inside. Dkt. 9-1. Eventually, Mr. Vanleer exited the restroom. *Id.* According to the report, Mr. Lauderdale-El "was in there at the same time." *Id.*

Mr. Lauderdale-El correctly notes that no evidence proves definitively that he participated in blocking the door. But only "some evidence" is required. *Ellison*, 820 F.3d at 274. The conduct report is evidence that Mr. Lauderdale-El was one of two inmates in the bathroom while the door was being blocked. This is "some evidence" to support the hearing officer's conclusion that Mr. Lauderdale participated in blocking the door. *See, e.g.*, *Hamilton v. O'Leary*, 976 F.3d 341, 345 (7th Cir. 1992) ("If, for example, only two inmates had access to the vent, there is a 50% probability that each inmate is guilty; a 50% probability amounts to 'some evidence.'"). Accordingly, Mr. Lauderdale-El's disciplinary conviction had the evidentiary support due process required.

### B. Denial of Evidence

Mr. Lauderdale-El argues that he was denied the right to present exculpatory evidence in his defense. Specifically, he alleges that he was not permitted to present surveillance video of the incident, an investigative report, or testimony from Mr. Anderson or Sergeant Houghton.

Due process entitled Mr. Lauderdale-El to a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563–67. That right is limited in that it extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

5

As the petitioner, Mr. Lauderdale-El bears the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). Mr. Lauderdale-El has failed to establish that any testimony from Mr. Anderson or Sergeant Houghton would have been material or exculpatory.

Mr. Lauderdale-El has not asserted in his petition or in his reply what testimony Mr. Anderson would have offered or what questions he would have asked Mr. Anderson. Similarly, neither the screening report nor the hearing report documents any indication of Mr. Anderson's expected testimony. Accordingly, the Court cannot conclude that Mr. Lauderdale-El was denied an opportunity to present material or exculpatory evidence from Mr. Anderson.

Mr. Lauderdale-El asserts that Sergeant Houghton would have stated that he "did not see the Petitioner in the restroom" and that he saw Mr. Lauderdale-El "on the banister in the hallway outside of the restroom." Dkt. 10 at 10–11. Sergeant Houghton states as much in a declaration: He never saw Mr. Lauderdale-El in the restroom on December 7, 2018, but saw him on the balcony outside the restroom with Mr. Vanleer. Dkt. 26-1 at ¶ 5. Critically, though, Sergeant Houghton states that that he did not witness the incident in the restroom. *Id.* at ¶ 4. Mr. Anderson called for Sergeant Houghton, and he arrived on the scene after Mr. Vanleer (and allegedly Mr. Lauderdale-El) had exited the restroom and moved to the balcony. *Id.* at ¶ 5. This testimony is entirely consistent with Mr. Lauderdale-El's assertion that Sergeant Houghton never saw him in the restroom. Moreover, Mr. Lauderdale-El has not asserted that Sergeant Houghton was present during the time he is alleged to have been in the restroom with Mr. Vanleer.

6

Accordingly, Mr. Lauderdale-El has not satisfied his burden of demonstrating that any testimony from Sergeant Houghton would have been material or exculpatory. Testimony that Sergeant Houghton saw Mr. Lauderdale-El outside the restroom *after* he and Mr. Vanleer were thought to have exited the restroom does not undermine the hearing officer's finding of guilt. Testimony that Sergeant Houghton never saw Mr. Lauderdale-El in the restroom would not create a reasonable probability of a different result if Sergeant Houghton was never in position to see Mr. Lauderdale-El during the time he was accused of being in the restroom.

As for the surveillance video and the investigatory report, the record indicates that neither ever existed. *See* dkts. 9-2, 9-9. "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). Mr. Lauderdale-El was not denied his limited right to present exculpatory, material evidence.

### C. Impartial Decision-Maker

Mr. Lauderdale-El alleges that he was denied the right to have his disciplinary case heard by an impartial decision-maker. *See Hill*, 472 U.S. at 454. "A 'sufficiently impartial' decision-maker is . . . necessary, in order to shield the prisoner from the arbitrary deprivation of his liberties." *White*, 266 F.3d at 768.

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed on the prison staff. *Piggie*, 342 F.3d at 666. The

7

presumption is overcome—and an inmate's right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Lauderdale-El's allegations do not support a finding that he was denied his right to an impartial hearing officer. He argues that the hearing officer denied his efforts to present certain evidence, violated IDOC or prison policies or procedures (for example, not allowing him to speak with a lay advocate before the hearing), denied his request for a continuance, and did not deliberate over his decision. He does not allege that the hearing officer was involved in the underlying event or in investigating it. The fact that Mr. Lauderdale-El did not receive the hearing outcome he sought, or even the accommodations that IDOC and prison procedures described, does not mean his case was not heard by an impartial decision-maker.

### D. Denial of Policies and Procedures

Mr. Lauderdale-El argues that he "requested policies and procedures from his property to properly prepare a defense," but they were confiscated from him instead. Dkt. 2 at 3.

Due process entitles an inmate to receive "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). "The notice requirement permits the accused to gather the relevant facts and prepare a defense." *Id.* The notice must be issued at least 24 hours before the hearing "so that the inmate has an opportunity to prepare for the appearance before the CAB." *Shephard v. Duckworth*, 106 F.3d 403, 1996 WL 9774, at *2 (7th Cir. 1997).

Mr. Lauderdale-El does not allege that he was not given at least 24 hours' notice of his hearing or that he was not provided sufficient information about the charges to prepare a defense. And even if due process entitled Mr. Lauderdale-El to have access to prison policies or procedures before his hearing, he has not stated what policies or procedures he was denied—much less how their denial prevented him from understanding or defending the charge against him. At most, then, denying Mr. Lauderdale-El such materials amounted to harmless error. *See Jones*, 637 F.3d at 847 (applying harmless error analysis in prison disciplinary cases); *Piggie*, 344 F.3d at 678 (same).

### E. Severity of Sanctions

Mr. Lauderdale-El argues that the sanctions the hearing officer assessed "were harsh." Dkt. 2 at 3. However, Mr. Lauderdale-El does not dispute that the sanctions were within the range corresponding to his offense under IDOC policy. *See* dkt. 9 at 10; dkt. 9-4; dkt. 9-8. Accordingly, his sanctions are not a basis for habeas relief. *See Smith v. Wrigley*, No. 1:09-cv-1201-DFH-TAB, 2009 WL 3270499, at *2 (S.D. Ind. 2009) (applying *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).

### F. Equal Protection

Mr. Lauderdale-El alleges that he was convicted and sanctioned in a manner that denied him equal protection of the law. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). "The Equal Protection Clause generally protects people who are treated differently

9

because of membership in a suspect class or who have been denied a fundamental right." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016). Mr. Lauderdale-El does not allege that he is a member of a suspect class or that he was treated differently from other, similarly situated inmates—much less that he was treated differently *because of* his membership in a suspect class. And, as noted throughout this Entry, the rights implicated by this disciplinary proceeding were the due-process rights discussed in *Wolff* and *Hill*—not a fundamental right within the scope of the Equal Protection Clause. Mr. Lauderdale-El has not made a case for habeas relief on equal protection grounds.

### G. Written Statement of Reasons for Decision

Finally, Mr. Lauderdale-El asserts in his memorandum that the hearing officer failed to provide a written statement of the evidence he relied upon and the reasons for his decision. Dkt. 8 at 15. Regardless of what factual support this argument finds, however, it is barred by procedural default because Mr. Lauderdale-El failed to present it in his administrative appeals. *See* dkt. 9-5.

A district court may not grant a state prisoner's petition for a writ of habeas corpus "unless it appears that" the petitioner "has exhausted the remedies available in" the state's courts. 28 U.S.C. § 2254(b)(1). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019).[2] "To avoid procedural default, an Indiana prisoner challenging a disciplinary proceeding must fully and fairly present his

---

[2] *See also Wilson-El v. Finnan*, 263 F. App'x 503, 506 (7th Cir. 2008) ("A petitioner is generally required to exhaust all of his available administrative remedies before seeking a writ of habeas corpus in federal court. If the petitioner fails to do so and the opportunity to raise that claim in state administrative proceedings has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition.") (internal citations omitted); *Moffat*, 288 F.3d at 982 ("That procedural default means . . . that state remedies were not exhausted, and precludes consideration of this theory under § 2254 . . . .").

10

federal claims to the facility head and to the Final Reviewing Authority." *Jackson v. Wrigley*, 256 F. App'x 812, 814 (7th Cir. 2007) (citing *Moffat*, 288 F.3d at 981–982 (holding that, because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner present his claims at both levels of the IDOC's administrative appeals process)).

Mr. Lauderdale-El presented numerous issues in his administrative appeals, but none of them involved the hearing officer's statement of reasons for his decision or the evidence he considered. Because Mr. Lauderdale-El did not present that issue in his administrative appeals, this Court cannot consider it.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Lauderdale-El's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Lauderdale-El's petition for a writ of habeas corpus must be **DENIED** and the action **dismissed with prejudice.**

Mr. Lauderdale-El's second motion for summary judgment, dkt. [34], is **denied as duplicative** of his petition. The Court previously notified Mr. Lauderdale-El that a motion for summary judgment is unnecessary in a habeas proceeding. Dkt. 14 (denying motion for summary judgment).

Mr. Lauderdale-El's motion requesting copies of court records, dkt. [33], is **denied as moot**. Mr. Lauderdale-El requested copies of certain documents to support his second motion for summary judgment, which was unnecessary.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 9/25/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LAMONE LAUDERDALE-EL
132421
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov